RECORD NO. 14-1195

In The

# United States Court of Appeals
## For The Fourth Circuit

**OTERIA Q. MOSES,**

*Plaintiff – Appellee*,

**v.**

**CASHCALL, INC.,**

*Defendant – Appellant*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT GREENVILLE**

―――――――――

**BRIEF OF APPELLANT**

―――――――――

Hayden J. Silver, III
Raymond M. Bennett
Jesse A. Schaefer
WOMBLE CARLYLE
  SANDRIDGE & RICE, LLP
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina  27601
(919) 755-2188

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1195__     Caption: __Moses v. CashCall, Inc.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__CashCall, Inc.__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                              ☐YES ☑NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                               ☐YES ☑NO
        If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☑YES ☐NO
    If yes, identify any trustee and the members of any creditors' committee:
    The Trustee in the underlying bankruptcy case is Richard M. Hutson.

Signature: _/s/ Hayden J. Silver, III_    Date: ___March 13, 2014___

Counsel for: _Appellant CashCall, Inc._

## CERTIFICATE OF SERVICE
**************************

I certify that on ___March 13, 2014___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Adrian M. Lapas
Strickland Lapas & Associates
112 N. Williams Street
Goldsboro, NC 27530
lapasecfnoticesonly@gmail.com
Attorney for Appellee

_/s/ Hayden J. Silver, III_                   ___March 13, 2014___
    (signature)                                      (date)

- 2 -

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................iv

JURISDICTIONAL STATEMENT ....................................................1

ISSUES PRESENTED.........................................................................2

STATEMENT OF THE CASE...............................................................3

    Debtor Agrees to Arbitrate ............................................................3

    Debtor Petitions for Bankruptcy...................................................4

    Debtor Files Adversary Proceeding Against CashCall ..................4

    Bankruptcy Court Denies CashCall's Motions to Compel Arbitration of Adversary Proceeding and to Withdraw Proof of Claim ..........................5

    District Court Affirms Bankruptcy Court's Refusal to Compel Arbitration........................................................................8

SUMMARY OF ARGUMENT ...........................................................10

ARGUMENT ......................................................................................13

    I.     Standard of Review ........................................................13

    II.    The Supreme Court Has Set Forth a Legal Framework for Identifying the Limited Circumstances in Which the Federal Arbitration Act's Mandate for Rigorous Enforcement of Arbitration Agreements Is Overcome ...............................14

            A.    The Federal Arbitration Act Is Liberally Construed and Rigorously Enforced .................................................14

i

B.    Under *McMahon*, Congressional Intent to Limit the Scope of the FAA Must Be Deducible From the Statute's Text or Legislative History or From an Inherent Conflict Between Arbitration and the Underlying Purpose of the Bankruptcy Code .................................................................16

C.    Application of the *McMahon* Analysis in the Bankruptcy Context Requires Enforcement of Arbitration Agreements Except in Very Limited Circumstances ...............17

III.    There Is No Dispute that the Arbitration Clause Encompasses Each of Debtor's Claims .....................................................25

IV.    Because Congress Did Not Intend to Create an Exception to the FAA for Any of Debtor's Claims, the Federal Arbitration Act Requires the Bankruptcy Court to Stay the Entire Adversary Proceeding and Compel Arbitration .....................................27

A.    The FAA Requires the Bankruptcy Court to Compel Arbitration of Debtor's Non-core NCDCA Cause of Action ...........................................................................28

1.    Congress Has Not Expressly Created an Exception to the FAA for Non-core Claims in Bankruptcy ............29

2.    Arbitration of Debtor's Non-Core Claim Would Not Inherently Conflict with the Purposes of The Bankruptcy Code ...........................................................31

B.    The FAA requires the Bankruptcy Court to compel arbitration of Debtor's core declaratory judgment and objection-to-claim causes of action ...........................................42

1.    Congress Has Not Expressly Created an Exception to the FAA for Core Claims in Bankruptcy ...................43

2.    Arbitration of Debtor's Core Claims Would Not Inherently Conflict with the Purposes of the Bankruptcy Code ...........................................................45

CONCLUSION ....................................................................................................51

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alexander v. Gardner-Denver Co.*,
    415 U.S. 36 (1974)................................................................37, 38

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009)...................................................................2

*Bigelow v. Green Tree Fin. Servicing Corp.*,
    2000 WL 33596476 (E.D. Cal. Nov. 30, 2000) ...........................................22

*Brown v. Trans World Airlines*,
    127 F.3d 337 (4th Cir. 1997) ...........................................24, 37, 38

*Butler v. Vanderbilt Mortgage & Finance, Inc.*,
    12-02026 (Bankr. S.D.W. Va. Feb. 4, 2013)................................20

*Cara's Notions v. Hallmark Cards, Inc.*,
    140 F.3d 566 (4th Cir. 1998) .......................................26

*Cibro Petroleum Prods., Inc. v. City of Albany (In re Winimo Realty Corp.)*,
    270 B.R. 108 (S.D.N.Y. 2001) ......................................22

*CompuCredit Corp. v. Greenwood*,
    132 S. Ct. 665, 181 L. Ed. 2d 586 (2012)....................................16

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)...............................................*passim*

*Ehleiter v. Grapetree Shores, Inc.*,
    482 F.3d 207 (3d Cir. 2007) .......................................2

*Ford Motor Credit Co. v. Roberson*,
    CIV. WDQ-10-1041, 2010 WL 4286077 (D. Md. Oct. 29, 2010)...............21

*Gilmer v. Interstate/Johnson Lane Corp.*,
    895 F.2d 195 (4th Cir. 1990), *aff'd*,
    500 U.S. 20 (1991)...........................................................................16, 17, 35

*Gingles v. Bethlehem Steel Corp.*,
    145 F.3d 1324 (4th Cir. 1998) ......................................................................16

*Green Tree Fin. Corp.-Alabama v. Randolph*,
    531 U.S. 79 (2000)...................................................................................33, 35

*Hawaiian Airlines, Inc. v. Norris*,
    512 U.S. 246 (1994)..................................................................................37, 39

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    885 F.2d 1149 (3d Cir. 1989) ................................................................*passim*

*Hooks v. Acceptance Loan Co., Inc.*,
    No. 2:10-CV-999-WKW,
    2011 WL 2746238 (M.D. Ala. July 14, 2011) ..................................12, 41, 42

*In re Alvarez*,
    733 F.3d 136 (4th Cir. 2013) ........................................................................13

*In re Crysen/Montenay Energy Co.*,
    226 F.3d 160 (2d Cir. 2000) ...................................................................*passim*

*In re D & B Swine Farms, Inc.*,
    09-02813-8-JRL,
    2011 WL 6013218 (Bankr. E.D.N.C. Dec. 2, 2011) ..............................20, 33

*In re Eber*,
    687 F.3d 1123 (9th Cir. 2012) ...............................................................*passim*

*In re Fries*,
    06-11424PM,
    2007 WL 1073868 (Bankr. D. Md. Jan. 17, 2007).....................21, 48, 49, 50

*In re Gandy*,
  299 F.3d 489 (5th Cir. 2002) ........................................................2, 23, 28, 48

*In re Gurga*,
  176 B.R. 196 (B.A.P. 9th Cir. 1994) ......................................................*passim*

*In re M & M Indep. Farms, Inc.*,
  09-03514-8-SWH,
  2011 WL 5902606 (Bankr. E.D.N.C. July 7, 2011)......................................20

*In re Mor-Ben Ins. Markets Corp.*,
  73 B.R. 644 (B.A.P. 9th Cir. 1987) ........................................................ 36-37

*In re Reynolds*,
  09-50032, 2010 WL 3955802 (Bankr. S.D.W. Va. Sept. 14, 2010) .............20

*In re Taneja*,
  743 F.3d 423 (4th Cir. 2014) .................................................................13, 28

*In re Thorpe Insulation Co.*,
  671 F.3d 1011 (9th Cir. 2012), *cert. denied*,
  133 S. Ct. 119, 184 L. Ed. 2d 26 (2012)................................ 18, 23-24, 29, 48

*In re U.S. Lines, Inc.*,
  197 F.3d 631 (2d Cir. 1999) ..................................................................*passim*

*In re White Mountain Mining Co., LLC*,
  403 F.3d 164 (4th Cir. 2005) .................................................................*passim*

*KPMG LLP v. Cocchi*,
  132 S. Ct. 23, 181 L. Ed. 2d 323 (2011).......................................................37

*Kulukundis Shipping Co. v. Amtorg Trading Corp.*,
  126 F.2d 978 (2d Cir. 1942) ........................................................................41

*Levin v. Alms & Assocs.*,
  634 F.3d 260 (4th Cir. 2011) .......................................................................26

*Lingle v. Norge Div. of Magic Chef, Inc.*,
  486 U.S. 399 (1988).....................................................................................38

*Matter of Nat'l Gypsum Co.*,
  118 F.3d 1056 (5th Cir. 1997) .................................................................*passim*

*MBNA Am. Bank, N.A. v. Hill*,
  436 F.3d 104 (2d Cir. 2006) ...................................................................*passim*

*Mintze v. Am. Gen. Fin. Servs., Inc. (In re Mintze)*,
  434 F.3d 222 (3d Cir. 2006) ...................................................................*passim*

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
  473 U.S. 614 (1985)......................................................................14, 16, 24, 35

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
  460 U.S. 1 (1983)......................................................................................14, 15, 35

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*,
  458 U.S. 50 (1982)..........................................................................................31

*Pardo v. Akai Elec. Co. Ltd. (In re Singer Co. N.V.)*,
  2001 WL 984678 (S.D.N.Y. Aug. 27, 2001) ................................................22

*Rodriguez de Quijas v. Shearson/American Express, Inc.*,
  490 U.S. 477 (1989)..........................................................................35, 41, 44

*Scherk v. Alberto-Culver Co.*,
  417 U.S. 506 (1974)........................................................................................14

*Seney v. Rent-A-Ctr., Inc.*,
  738 F.3d 631 (4th Cir. 2013) .......................................................................17

*Shearson/Am. Exp., Inc. v. McMahon*,
  482 U.S. 220 (1987).......................................................................................*passim*

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984).............................................................................................16

*Stern v. Marshall*,
  131 S. Ct. 2594 (2011).......................................................................................6

*Summer Rain v. Donning Co./Publishers, Inc.*,
    964 F.2d 1455 (4th Cir. 1992) ............................................... 11, 34, 37-38, 40

*TP, Inc. v. Bank of Am., N.A. (In re TP, Inc.)*,
    479 B.R. 373 (Bankr. E.D.N.C. 2012) ...............................................6, 20, 33

*United States v. Bankers Ins. Co.*,
    245 F.3d 315 (4th Cir. 2001) ................................................................15, 17

*Whiting–Turner Contracting Co. v.*
*Elec. Mach. Enters., Inc. (In re Elec. Mach. Enters., Inc.)*,
    479 F.3d 791 (11th Cir. 2007) ...............................................................*passim*

## STATUTES

9 U.S.C. § 3 ...............................................................................................5, 10, 15

9 U.S.C. § 4 ...............................................................................................15

9 U.S.C. § 16 .............................................................................................8

9 U.S.C. § 16(a) ........................................................................................1

11 U.S.C. § 501(a) .....................................................................................4

11 U.S.C. § 502(a) .....................................................................................26

11 U.S.C. § 1126(d) ...................................................................................47

11 U.S.C. § 1129(a) ...................................................................................47

15 U.S.C. § 78aa .......................................................................................44

15 U.S.C. § 78cc(a) ...................................................................................44

18 U.S.C. § 1964(c) ...................................................................................39

28 U.S.C. § 157(a) .....................................................................................1

28 U.S.C. § 157(b) .....................................................................................23, 28

28 U.S.C. § 157(b)(1)................................................................1

28 U.S.C. § 157(b)(2)................................................................6

28 U.S.C. § 157(b)(5)...............................................................30

28 U.S.C. § 157(c)(1).................................................1, 7, 30, 31

28 U.S.C. § 158(a) ...................................................................8

28 U.S.C. § 158(a)(3)................................................................1

28 U.S.C. § 158(d) ...................................................................1

28 U.S.C. § 2201.....................................................................26

28 U.S.C. § 1334......................................................................1

28 U.S.C. § 1334(b).................................................................30

28 U.S.C. § 1334(c).................................................................30

N.C. Gen. Stat. §§ 53-164 to -191 ............................................4

N.C. Gen. Stat. §§ 75-50 to -56 ...........................................5, 26

## OTHER AUTHORITIES

H.R. Rep. No. 96, 68th Congr., 1st Sess., 1 (1924)..................14

RICO .................................................................................35, 39

The Sherman Act ....................................................................35

The Securities Exchange Act of 1933..................................35, 44

The Securities Exchange Act of 1934..................................35, 43

# JURISDICTIONAL STATEMENT

This appeal is taken from the final order and judgment of the District Court for the Eastern District of North Carolina ("District Court") affirming an interlocutory order of the Bankruptcy Court for the Eastern District of North Carolina ("Bankruptcy Court") denying Defendant-Appellant CashCall, Inc.'s ("CashCall") motion to dismiss or stay and compel arbitration of an adversary proceeding filed by Plaintiff-Appellee Oteria Q. Moses ("Debtor"). Joint Appendix ("JA") 124-29, 130. CashCall timely filed its notice of appeal on February 27, 2014.

The Bankruptcy Court had subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 (conferring bankruptcy jurisdiction on the district courts), 28 U.S.C. §§ 157(a), (b)(1), (c)(1) (allowing district courts to refer bankruptcy matters to the bankruptcy courts), and the Order Referring Bankruptcy Matters to Bankruptcy Judges (E.D.N.C. Aug. 3, 1984).[1] The District Court had appellate jurisdiction pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a), which allows immediate appeal of orders denying arbitration, and pursuant to 28 U.S.C. § 158(a)(3). This Court has appellate jurisdiction pursuant to 9 U.S.C. § 16(a) and 28 U.S.C. § 158(d). *See In re Eber*, 687 F.3d 1123, 1126 (9th Cir. 2012) (circuit court of appeals has appellate jurisdiction over district court order

---

[1] The Referral Order is available at http://www.nced.uscourts.gov/data/Standing Orders/bank%20080384%20referral%20of%20bank%20matter.pdf.

affirming a bankruptcy court order denying arbitration); *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 106 (2d Cir. 2006) (same); *In re Mintze*, 434 F.3d 222, 227 (3d Cir. 2006) (same); *In re Gandy*, 299 F.3d 489, 493-94 (5th Cir. 2002) (same); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 213-15 (3d Cir. 2007) (discussing second-level appellate jurisdiction permitted by the FAA); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 627 (2009) ("[A]ny litigant who asks for a stay under [the FAA] is entitled to an immediate appeal from denial of that motion").

## ISSUES PRESENTED

1.      Did the Bankruptcy Court err in refusing to compel arbitration pursuant to the Federal Arbitration Act of a non-core claim in an adversary proceeding that undisputedly falls within the scope of the arbitration agreement?

2.      Under this Court's decision in *In re White Mountain Mining Co., LLC*, 403 F.3d 164, 169 (4th Cir. 2005), does the Federal Arbitration Act require a bankruptcy court to compel arbitration of an adversary proceeding where (i) the parties do not dispute that all claims fall within the scope of an arbitration agreement and (ii) there is no inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code when arbitration would not delay or impact Plan confirmation, alter Plan payments, delay debtor's discharge, or otherwise hinder the reorganization process?

# STATEMENT OF THE CASE

### *Debtor Agrees to Arbitrate*

Debtor entered into a Consumer Loan Agreement (the "Note" or "Loan Agreement") with Western Sky Financial, LLC ("Western Sky") in May 2012, in which she promised to pay the holder of the Note $1500 plus interest. JA 74. The Loan Agreement contained an arbitration clause (the "Arbitration Clause") in which the parties agreed to resolve any "disputes" arising from the Loan Agreement in binding arbitration. JA 76. The Arbitration Clause defined "dispute" broadly to include

> any controversy or claim between you and Western Sky or the holder or servicer of the Note. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of this Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim based upon marketing or solicitations to obtain the loan and the handling or servicing of any account whether such Dispute is based on a tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this loan or the Arbitration Agreement.

JA 76. The Arbitration Clause permitted the Debtor to opt out of its provisions within sixty days after the loan was made, which the Debtor did not do. JA 77. In addition, it provided that CashCall would pay all the costs associated with any

arbitration proceeding. JA 76. The Debtor was free to choose both the arbitrator and the location of the arbitration. JA 76.

Western Sky subsequently assigned its rights under the Loan Agreement to CashCall. JA 80. Debtor defaulted on her obligations under the Loan Agreement, and CashCall allegedly communicated with the Debtor in an attempt to collect the debt. JA 33-34, at ¶¶ 6–7.

### *Debtor Petitions for Bankruptcy*

In August 2012, the Debtor petitioned for bankruptcy under Chapter 13 of the Bankruptcy Code. JA 1. In the bankruptcy proceeding, CashCall filed a proof of claim for the unpaid balance of the loan pursuant to 11 U.S.C. § 501(a). JA 28. Debtor proposed a Chapter 13 Plan that would pay nothing to general unsecured creditors, including CashCall. JA 42. There were no objections to the Chapter 13 Plan, and the Bankruptcy Court confirmed the Plan on October 25, 2012. JA 50.

### *Debtor Files Adversary Proceeding Against CashCall*

Debtor initiated an adversary proceeding against CashCall on August 23, 2012. JA 31-41. In the adversary proceeding Complaint, Debtor (1) objected to CashCall's proof of claim, (2) requested a declaratory judgment that the Loan Agreement was void under the interest-regulating provisions of the North Carolina Consumer Finance Act, N.C. Gen. Stat. §§ 53-164 to -191 ("NCCFA"), and (3) demanded money damages for CashCall's alleged violation of North Carolina's

Prohibited Acts by Debt Collectors statute, N.C. Gen. Stat. §§ 75-50 to -56 (the "North Carolina Debt Collection Act" or "NCDCA"). *Id.* The NCDCA claim was grounded, in part, on the theory that any attempts to collect the debt were unlawful because the Loan Agreement was void under the NCCFA. JA 38-39, at ¶¶ 30-31. In addition, Debtor alleged that CashCall engaged in "other and further" violations of the NCDCA, regardless of whether the Loan Agreement was found to be valid. JA 39, at ¶ 32. The NCDCA claim sought statutory damages of $4,000.00 for every alleged violation of the NCDCA, additional damages for emotional distress, and attorney's fees.  JA 39-40, at ¶¶ 33, 35-36.

### Bankruptcy Court Denies CashCall's Motions to Compel Arbitration of Adversary Proceeding and to Withdraw Proof of Claim

On November 13, 2012, CashCall filed two motions with the Bankruptcy Court. First, it moved to compel arbitration of the entire adversary proceeding pursuant to the FAA. JA 51-54 (citing 9 U.S.C. § 3). Second, CashCall sought leave to withdraw its proof of claim with prejudice because it determined that it was more cost effective to voluntarily abandon its $1,929.02 claim than to litigate the matter. JA 55-58. The Bankruptcy Court denied both motions by separate orders entered on January 3, 2013. JA 81-89; JA 90-92.

In the order denying arbitration, the Bankruptcy Court began with the principle—subject to challenge in this appeal—that in bankruptcy proceedings, generally, non-core claims are arbitrable but core claims are not. JA 84 (citing *TP, Inc. v. Bank of Am., N.A.*, 479 B.R. 373, 382 (Bankr. E.D.N.C. 2012)). As the Bankruptcy Court recognized, after the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), determining whether a claim is core or non-core requires a two-step analysis because claims may be either statutorily or constitutionally non-core. First, the Bankruptcy Court determined that each of Debtor's non-bankruptcy claims (*i.e.*, the request for a declaratory judgment and the claim for damages under the NCDCA) were ***statutorily*** core because they operated as "counterclaims of the estate against persons filing claims against the estate." JA 85. (citing 28 U.S.C. § 157(b)(2)). Applying the Supreme Court's decision in *Stern*, the Bankruptcy Court determined that the declaratory judgment cause of action was also ***constitutionally*** core because it would be necessarily resolved in the claims allowance process and was thus "necessarily intertwined" with Debtor's objection. JA 86-87.

With regard to the NCDCA cause of action, however, the Bankruptcy Court concluded that *Stern* required a different result. JA 87. Because the NCDCA cause of action (i) did not stem from the bankruptcy itself and (ii) would not necessarily be resolved in the claims allowance process, the Bankruptcy Court held that the

NCDCA claim was non-core.[2] JA 88. Even though it concluded the NCDCA claim was non-core, the Bankruptcy Court nevertheless refused to compel arbitration of any of the claims, electing instead to enter final judgment on the core declaratory judgment cause of action and to submit findings of fact and conclusions of law to the district court on the non-core NCDCA cause of action. JA 88.

In the order denying CashCall's motion to withdraw the proof of claim, the Bankruptcy Court concluded that withdrawal would "eliminat[e] this Court's jurisdiction over any causes of action related to the [proof of] claim," and would require Debtor to bring her declaratory judgment and NCDCA claims in state court "or proceed with arbitration as required by the loan agreement." JA 92. Even if the Bankruptcy Court's jurisdictional reasoning was sound,[3] the Bankruptcy Court

_____

[2] Although this Court may review de novo the Bankruptcy Court's determination of the core and non-core nature of Debtor's respective claims, the parties in this case agree that this aspect of the Bankruptcy Court's analysis was done correctly. *See* JA 32, at ¶ 3; *id.* at 83, 125-26. The dispute between the parties on this appeal is not whether the claims are core or non-core, but rather the effect such designations should have on CashCall's motion to compel arbitration pursuant to the FAA.

[3] It is doubtful that the Bankruptcy Court's subject matter jurisdiction over the adversary proceeding is dependent on the proof of claim. As the Bankruptcy Court itself recognized, the Bankruptcy Code gives bankruptcy courts the jurisdiction to hear any cause of action that is related to a bankruptcy, regardless of the existence of a proof of claim, in order for the bankruptcy courts to provide findings of fact and conclusions of law to the district court. *See* JA 87; *see also* 28 U.S.C. § 157(c)(1). As explained more fully below, it is the FAA, not a lack of subject matter jurisdiction, that requires the Bankruptcy Court to stay the adversary proceeding and compel arbitration.

expressly recognized that withdrawal of the proof of claim would not destroy Debtor's causes of action grounded in non-bankruptcy law because they could be brought in another appropriate forum. JA 92. Yet the Bankruptcy Court held that allowing another tribunal to adjudicate the non-bankruptcy claims would significantly prejudice Debtor because the other tribunal would be inferior to the Bankruptcy Court. JA 92 (holding that adjudication by anyone but the Bankruptcy Court would "necessarily delay any potential recovery to which the Debtor may be entitled."). For this reason alone, the Bankruptcy Court denied CashCall's request withdraw the proof of claim with prejudice, which would have entirely satisfied Debtor's only bankruptcy claim for relief (*i.e.*, the objection to the proof of claim).

### *District Court Affirms Bankruptcy Court's Refusal to Compel Arbitration*

On January 17, 2013, CashCall filed notices of appeal to the District Court for each of the Bankruptcy Court's orders. The appeal of the order denying arbitration was taken as a matter of right under the FAA. JA 93 (citing 9 U.S.C. § 16). In addition, CashCall also sought leave to appeal each of the interlocutory orders pursuant to 28 U.S.C. § 158(a). The District Court denied the motion for leave to appeal the order preventing CashCall from withdrawing its proof of claim, JA 118-21, but granted leave to appeal the order denying arbitration of the adversary proceeding. JA 122-23.

On February 4, 2014, the District Court entered an order and judgment affirming the Bankruptcy Court's refusal to require arbitration. JA 124-129. The District Court concluded the Bankruptcy Court had implicitly found that the NCDCA claim "exclusively depend[ed] on" the determination of the declaratory judgment claim, which in turn, was "necessarily intertwined in the claims allowance process." JA 126. The District Court declared that "bankruptcy courts have an absolute interest in resolving core claims before them, even where those claims would in another setting be inarguably subject to referral to arbitration." JA 126-127 (citing *White Mountain*, 403 F.3d at 169-70). Although the District Court recognized that "non-core matters are *generally* referred to arbitration," it stated that "this Court is unaware of any holding in this circuit that *requires* such an outcome." JA 127 (second emphasis added). The District Court concluded that the non-core NCDCA cause of action was "inextricably intertwined" with the core declaratory judgment cause of action, and thus sending the NCDCA claim to arbitration "would frustrate, rather than facilitate, the efficiency favored by arbitration and could potentially lead to inconsistent results." JA 128. CashCall appealed to this Court on February 27, 2014. JA 131-33.

## SUMMARY OF ARGUMENT

The Bankruptcy and District Courts below erred in not compelling arbitration of both the core and non-core claims, which the parties agreed fell within the scope of their mutually agreed upon arbitration clause. First, the lower courts failed to follow—or even address—Supreme Court and Circuit Court of Appeals precedent (specifically, the Second, Third, Fifth, Ninth, and Eleventh Circuits) that the FAA should be uniformly enforced absent a clear showing that Congress otherwise intended to limit the application of the FAA. The FAA requires all legal proceedings within the scope of an arbitration agreement to be referred to arbitration upon motion of one of the parties to the arbitration agreement. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 221 (1985); *see also* 9 U.S.C. § 3. This mandate applies to all claims, even those before a bankruptcy court, unless the party opposing arbitration can show that Congress intended to limit the application of the FAA by enacting another statute. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Except in very limited circumstances, the Bankruptcy Code does not relieve bankruptcy courts of their obligation to comply with the Congressional mandate in the FAA. Every appellate court that has considered the interplay between the FAA and the Bankruptcy Code has concluded that Congress intended to exclude from the FAA only a small subset of core claims. *See In re Eber*, 687 F.3d at 1130 n.6 (9th Cir.

2012); *In re Elec. Mach. Enterprises*, 479 F.3d 791, 796 (11th Cir. 2007); *In re Mintze*, 434 F.3d 222, 231 (3d Cir. 2006); *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 166 (2d Cir. 2000); *In re U.S. Lines*, 197 F.3d 631, 640 (2d Cir. 1999); *Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1067 (5th Cir. 1997); *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 109-10 (2d Cir. 2006). None of Debtor's claims fall within this exclusion, and thus the bankruptcy court (and the district court) were obligated to compel arbitration.

Second, the lower courts here misconstrued this Court's decision in *White Mountain* to mean that *all* core claims in bankruptcy are categorically exempt from the FAA. That is not the holding of *White Mountain*. Moreover, that conclusion has been rejected by every appellate court to consider the issue, including the Second, Third, Fifth, Ninth, and Eleventh Circuits.

Third, the District Court below incorrectly concluded that the Bankruptcy Court had discretion to deny arbitration of non-core claims merely because such claims share common questions of fact and law with a core claim, a proposition previously rejected by the Supreme Court in *Byrd* and by this Court in *Summer Rain v. Donning Co./Publishers, Inc.*, 964 F.2d 1455, 1457 (4th Cir. 1992). Nor does this conclusion square with the strong policies favoring enforcement of the FAA. As a practical result, if allowed to stand, the ruling below would mean that bankruptcy courts could always refuse to enforce arbitration clauses with regard to

arbitrable claims merely because a proof of claim was filed. Creditors routinely file proofs of claim based on agreements that contain valid, enforceable arbitration clauses. The lower courts' holdings here would eviscerate such arbitration agreements, simply because a proof of claim was filed and the debtor then chose to assert non-core claims for damages that the parties agree fall within the scope of their arbitration agreement.

No authority supports this result. The only precedent cited by the District Court in support of this departure from the FAA is a district court opinion from Alabama holding that contempt proceedings of a bankruptcy order may be decided by a bankruptcy judge. *Hooks v. Acceptance Loan Co., Inc.*, No. 2:10-CV-999-WKW, 2011 WL 2746238 *5 (M.D. Ala. July 14, 2011). The case is inapposite; the present appeal has nothing to do with contempt proceedings, and no non-core claims were even at issue in *Hooks*.

Finally, under *McMahon*, the FAA applies with full force to each of the Debtor's claims unless she can show that Congress intended for the Bankruptcy Code to exclude her claims from the FAA. To make such a showing, the Debtor must point to either the text and legislative history of the Bankruptcy Code itself, or to an "inherent conflict" between the two statutes. Neither showing has been made, and in fact, the opposite is true: the appellate courts are unanimous in holding that the language of the Bankruptcy Code and its legislative history does

not reflect any express intent by Congress to limit the application of the FAA by excluding claims like those at issue here. Nor would arbitration of these claims present an inherent conflict with the Bankruptcy Code. Arbitration of the entire adversary proceeding will not substantially interfere with Debtor's efforts to reorganize or seriously jeopardize her bankruptcy because none of the matters to be decided will delay or diminish her opportunity for a discharge, alter the Chapter 13 Plan, or increase the payments she is required to make.

Accordingly, the lower courts' orders denying CashCall's motion to compel arbitration of this adversary proceeding should be reversed.

## ARGUMENT

### I.    Standard of Review

When reviewing a district court's order affirming a bankruptcy court decision, this Court "consider[s] directly the bankruptcy court's findings of fact and conclusions of law." *In re Alvarez*, 733 F.3d 136, 140 (4th Cir. 2013). The Court "review[s] de novo the legal conclusions of the bankruptcy court and the district court." *In re Taneja*, 743 F.3d 423, 429 (4th Cir. 2014). Although no findings of fact have been made in this case, a Bankruptcy Court's findings of fact are reviewed for clear error. *Id.*

II.   **The Supreme Court Has Set Forth a Legal Framework for Identifying the Limited Circumstances in Which the Federal Arbitration Act's Mandate for Rigorous Enforcement of Arbitration Agreements Is Overcome**

The legislative framework of both the FAA and the Banktruptcy Code make clear that arbitration agreements must be enforced even in Bankruptcy, except in very limited circumstances. Courts that have examined the interplay between the two statutes in the bankruptcy context—including this one—have carved out otherwise arbitrable claims from the FAA only for core claims that cannot be arbitrated without "substantially interfer[ing] with the debtor's efforts to reorganize." *See White Mountain*, 403 F.3d at 170.

A.   **The Federal Arbitration Act Is Liberally Construed and Rigorously Enforced.**

The FAA is "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (noting the "emphatic federal policy in favor of arbitral dispute resolution."). Congress enacted the FAA in 1924 to "revers[e] centuries of judicial hostility to arbitration agreements." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) (quoting H.R. Rep. No. 96, 68th Congr., 1st Sess., 1, 2 (1924)); *see also Byrd*, 470 U.S. at 219-20 (stating that purpose of the FAA was to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate.").

14

The FAA accomplishes this purpose by a straightforward mandate: when a party moves for enforcement of an arbitration agreement, the courts must refer all disputes within the scope of the arbitration agreement to the arbitral forum and stay the related judicial proceedings. 9 U.S.C. §§ 3, 4.

Standing alone, then, the FAA broadly requires courts to "rigorously enforce agreements to arbitrate" by compelling arbitration of all claims contemplated by the language of the arbitration agreement. *Byrd*, 470 U.S. at 218 ("[T]he Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."); *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001) ("If the issues in the case are within the contemplation of the arbitration agreement, the FAA's stay-of-litigation provision is mandatory, and there is no discretion vested in the district court to deny the stay."). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25. In this case, Debtor's only defense to arbitrability is that the FAA's mandate does not apply to these bankruptcy proceedings.

**B.     Under *McMahon*, Congressional Intent to Limit the Scope of the FAA Must Be Deducible From the Statute's Text or Legislative History or From an Inherent Conflict Between Arbitration and the Underlying Purpose of the Bankruptcy Code.**

"Like any statutory directive, the Arbitration Act's mandate may be overridden by contrary congressional command." *McMahon*, 482 U.S. at 226; *see also Mitsubishi Motors*, 473 U.S. at 628 (holding that the FAA's mandate applies "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue"); *Southland Corp. v. Keating*, 465 U.S. 1, 16 n.11 (1984) (noting that the question is whether Congress, in subsequently enacting another statute, intended to exempt certain claims from the general application of the FAA). A party opposing arbitration must show that Congress intended for another statute to create an exception to the otherwise universal application of the FAA. *McMahon*, 482 U.S. at 227 (1987); *Gingles v. Bethlehem Steel Corp.*, 145 F.3d 1324 (4th Cir. 1998); *Gilmer v. Interstate/Johnson Lane Corp.*, 895 F.2d 195, 196-97 (4th Cir. 1990), *aff'd*, 500 U.S. 20 (1991); *see also CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 673, 181 L. Ed. 2d 586 (2012) (holding the FAA's mandate applies by default when the other statute is silent on arbitrability); *Byrd*, 470 U.S. at 218 (holding that arbitration is mandatory "insofar as the language of the [FAA] guides our disposition of this case").

In *McMahon*, the Supreme Court instructed that, if Congress intended to curtail the expansive scope of the FAA by subsequent statute, such intent would

16

"be deducible from the statute's text or legislative history or from an inherent conflict between arbitration and the statute's underlying purposes." 482 U.S. at 226 (internal citations and alteration marks omitted). With regard to the "inherent conflict" prong, this Court has cautioned that "[c]ourts should be reluctant . . . to imply in a statute an intention to preclude enforcement of arbitration agreements where Congress has not expressed one, particularly in light of the countervailing intention expressed by Congress in the FAA." *Gilmer*, 895 F.2d at 197, *aff'd*, 500 U.S. 20 (1991); *see also Seney v. Rent-A-Ctr., Inc.*, 738 F.3d 631, 635 (4th Cir. 2013) ("*McMahon* established that if a statute is silent with respect to arbitration, courts should presume its permissibility."). It is the burden of the party opposing arbitration to rebut this "heavy presumption of arbitrability." *McMahon*, 482 U.S. at 226 (1987); *Bankers Ins. Co.*, 245 F.3d at 318.

## C. Application of the *McMahon* Analysis in the Bankruptcy Context Requires Enforcement of Arbitration Agreements Except in Very Limited Circumstances.

The "heavy presumption of arbitrability" applies with equal force in the bankruptcy context, even though courts have long recognized there will be limited circumstances in which the Bankruptcy Code and the FAA present a "conflict of near polar extremes." *See, e.g.*, *In re U.S. Lines, Inc.*, 197 F.3d 631, 640 (2d Cir. 1999) ("[T]here will be occasions where a dispute involving both the Bankruptcy Code and the Arbitration Act presents a conflict of near polar extremes:

17

bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach towards dispute resolution." (internal citations and quotation marks omitted)). Accordingly, the courts have looked to *McMahon*'s analytical framework to determine whether—and to what extent— Congress intended for the Bankruptcy Code to displace the FAA. *See, e.g.*, *White Mountain*, 403 F.3d 164 (following the McMahon analysis).

Importantly, no appellate court has found an express congressional intent discernable in the Bankruptcy Code's text or legislative history to limit the FAA. *See In re Thorpe Insulation Co.*, 671 F.3d 1011, 1020 (9th Cir. 2012) ("Neither the text nor the legislative history of the Bankruptcy Code reflects a congressional intent to preclude arbitration in the bankruptcy setting."), *cert. denied*, 133 S. Ct. 119, 184 L. Ed. 2d 26 (2012); *In re Eber*, 687 F.3d at 1129 ("This Circuit and sister circuits applying the *McMahon* factors to the Bankruptcy Code have found no evidence in the text of the Bankruptcy Code or in the legislative history suggesting that Congress intended to create an exception to the FAA in the Bankruptcy Code."); *Whiting–Turner Contracting Co. v. Elec. Mach. Enters., Inc. (In re Elec. Mach. Enters., Inc.)*, 479 F.3d 791, 796 (11th Cir. 2007) ("Applying the *McMahon* factors to the Bankruptcy Code, we find no evidence within the text or in the legislative history that Congress intended to create an exception to the FAA in the Bankruptcy Code."); *Mintze v. Am. Gen. Fin. Servs., Inc. (In re*

18

*Mintze)*, 434 F.3d 222, 227 (3d Cir. 2006) ("We find no evidence of such intent in either the statutory text or the legislative history of the Bankruptcy Code."); *In re Gurga*, 176 B.R. 196, 200 (B.A.P. 9th Cir. 1994) ("There is nothing either explicit or inherent in the Bankruptcy Code excusing Source from arbitration of these noncore claims."); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1157 (3d Cir. 1989) ("Hays has pointed to no provisions in the text of the bankruptcy laws, and we know of none, suggesting that arbitration clauses are unenforceable in a non-core adversary proceeding in a district court to enforce a claim of the estate.").

The closest this Court has come to addressing the interplay between the FAA and the Bankruptcy Code is in its decision in *White Mountain* where it addressed whether core claims are subject to arbitration. There, a panel of this Circuit expressly stated that it was not then deciding whether *McMahon*'s first two prongs (*i.e.*, the text and legislative history of the Bankruptcy Code) evinced an intent by Congress to limit the application of the FAA in bankruptcy proceedings. *See White Mountain Mining*, 403 F.3d at 169 ("We need not decide today whether the statutory text itself demonstrates congressional intent to override arbitration for core claims because this case may be decided under *McMahon* 's third line of analysis"). Rather, in *White Mountain* this Court focused on the third *McMahon* prong (*i.e.*, whether there is an inherent conflict between the Bankruptcy Code and

19

the FAA).  In *White Mountain* the panel concluded that, at least for *some* core claims, the context may rise to the level of an "inherent conflict" demonstrating Congress's implicit intent to curb the application of the FAA. *Id.* at 170 ("The inherent conflict between arbitration and the purposes of the Bankruptcy Code is revealed clearly *in this case*, in which both the adversary proceeding and the London arbitration involved the core issue of whether Phillips's advances to the debtor were debt or equity." (emphasis added)).

Although this Court left unanswered the question whether *all* core claims in bankruptcy inherently conflict with the FAA, some lower courts in this circuit have interpreted *White Mountain* to create an absolute dichotomy in which all core claims are presumptively exempt from the FAA. *See* JA 126 ("[B]ankruptcy courts have an *absolute interest* in resolving core claims before them, even where those claims would in another setting be inarguably subject to referral to arbitration." (emphasis added)); *see also, e.g.*, *Butler v. Vanderbilt Mortgage & Finance, Inc.*, 12-02026, *3-*4 (Bankr. S.D.W. Va. Feb. 4, 2013); *TP*, 479 B.R. at 382; *In re D & B Swine Farms, Inc.*, 09-02813-8-JRL, 2011 WL 6013218 (Bankr. E.D.N.C. Dec. 2, 2011); *In re Reynolds*, 09-50032, 2010 WL 3955802 (Bankr. S.D.W. Va. Sept. 14, 2010). But this mechanical application of the *McMahon-White Mountain* test is by no means universally accepted in this circuit. *See, e.g.*, *In re M & M Indep. Farms, Inc.*, 09-03514-8-SWH, 2011 WL 5902606 (Bankr. E.D.N.C. July 7, 2011)

20

("There is, unfortunately, no 'bright-line' rule, though this court agrees with other courts that it would be extremely useful to have one."); *Ford Motor Credit Co. v. Roberson*, CIV. WDQ-10-1041, 2010 WL 4286077 (D. Md. Oct. 29, 2010) ("[In *White Mountain*,] the Fourth Circuit did not hold that arbitration of a core proceeding would always conflict with the bankruptcy code; nor did it hold that arbitration of non-core proceedings would never conflict"); *In re Fries*, 06-11424PM, 2007 WL 1073868 (Bankr. D. Md. Jan. 17, 2007) (referring a core claim to arbitration after concluding that doing so would not inherently conflict with the Bankruptcy Code).

Other appellate courts, however, have squarely met the issue of whether *every* core claim in bankruptcy inherently conflicts with the FAA—and those courts have unanimously rejected the notion. *In re Eber*, 687 F.3d at 1130 n.6 (9th Cir. 2012) ("[E]ven as to core proceedings, the bankruptcy court will not have discretion to override an arbitration agreement unless it finds that the proceedings are based on provisions of the Bankruptcy Code that 'inherently conflict' with the Arbitration Act or that arbitration of the claim would 'necessarily jeopardize' the objectives of the Bankruptcy Code." (internal quotation marks omitted)); *In re Elec. Mach. Enterprises*, 479 F.3d at 796 ("[E]ven if a proceeding is determined to be a core proceeding, the bankruptcy court must still analyze whether enforcing a valid arbitration agreement would inherently conflict with the underlying purposes

of the Bankruptcy Code."); *In re Mintze*, 434 F.3d at 231 ("[A] finding that a proceeding is a core proceeding does not automatically give a bankruptcy court the discretion to deny arbitration"); *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 166 (2d Cir. 2000) ("Even in core proceedings . . . the bankruptcy court nonetheless *might* lack discretion to decline to stay in favor of arbitration." (internal quotation marks omitted)); *In re U.S. Lines*, 197 F.3d at 640 ("[E]ven a determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay arbitration."); *Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1067 (5th Cir. 1997) ("Certainly not all core bankruptcy proceedings are premised on provisions of the Code that 'inherently conflict' with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code."). Indeed, "[d]istrict courts have often reversed bankruptcy decisions refusing to compel arbitration of core bankruptcy matters and granted motions to arbitrate core claims on the grounds that arbitration would not interfere with or affect the distribution of the estate." *MBNA*, 436 F.3d at 109-10 (citing *Cibro Petroleum Prods., Inc. v. City of Albany (In re Winimo Realty Corp.)*, 270 B.R. 108 (S.D.N.Y. 2001); *Pardo v. Akai Elec. Co. Ltd. (In re Singer Co. N.V.)*, 2001 WL 984678 (S.D.N.Y. Aug. 27, 2001); *Bigelow v. Green Tree Fin. Servicing Corp.*, 2000 WL 33596476 (E.D. Cal. Nov. 30, 2000)).

Accordingly, regardless of the confusion among some courts in this Circuit regarding whether all *core* claims are beyond the reach of the FAA, the courts have universally held—at least until the opinions below—[4] that all *non-core* claims must be arbitrated pursuant to the FAA's mandate because Congress, in enacting the Bankruptcy Code, did not intend to carve out an exception to the FAA for these claims. *See In re Gandy*, 299 F.3d at 495 ("[I]t is generally accepted that a bankruptcy court has no discretion to refuse to compel arbitration of matters not involving 'core' bankruptcy proceedings under 28 U.S.C. § 157(b)."); *In re Crysen/Montenay*, 226 F.3d at 166 ("[The proposition] that district courts *must* stay non-core proceedings in favor of arbitration . . . is generally accepted." (emphasis in original)); *id.* at 166 ("[B]ankruptcy courts *must* stay non-core proceedings . . . ." (emphasis in original)); *Matter of Nat'l Gypsum Co.*, 118 F.3d at 1066 (the conclusion that non-core core claims must be referred to arbitration "makes eminent sense" and "has been universally accepted"); *In re Gurga*, 176 B.R. at 197 ("We hold that a bankruptcy court must enforce an agreement to arbitrate a claim that is noncore."); *see also In re Thorpe Insulation Co.*, 671 F.3d

---

[4] Neither the Bankruptcy Court nor the District Court actually concluded that Congress intended for the Bankruptcy Code to supplant the FAA with regard to Debtor's non-core claim. Instead, as discussed more fully below, these courts improperly relied on their own impressions of whether application of the FAA to the non-core claims in this case is desirable policy.

1101; *In re Elec. Mach. Enters.*, 479 F.3d at 796 n.2; *MBNA*, 436 F.3d at 108; *In re U.S. Lines*, 197 F.3d at 640; *Hays*, 885 F.2d at 1150.

All told, the courts have understood the FAA and *McMahon* to require a three-step analysis for determining whether arbitration clauses should be enforced in bankruptcy. First, the court must determine whether each particular dispute is within the scope of the arbitration clause. *See, e.g.*, *Mitsubishi Motors*, 473 U.S. at 626. If a dispute is not contemplated by the language of parties' arbitration agreement, the FAA does not require the court to compel arbitration. *See, e.g.*, *Brown*, 127 F.3d at 342. Second, the court should determine whether each cause of action is core or non-core. *See, e.g.*, *Matter of Nat'l Gypsum Co.*, 118 F.3d at 1066-67. If a cause of action is non-core, it must be referred to arbitration. *See, e.g.*, *In re Crysen/Montenay*, 226 F.3d at 166. Third, the court should examine each of the remaining, core proceedings and determine whether arbitration of the action would inherently conflict with the purposes of the Bankruptcy Code. *See, e.g.*, *In re Elec. Mach. Enters.*, 479 F.3d at 796. Any core claims that do not inherently conflict with bankruptcy must be referred to arbitration. *See, e.g.*, *id.*; *MBNA*, 436 F.3d at 110. In other words, the courts have consistently held that **every** claim in bankruptcy that is governed by an arbitration agreement must be referred to arbitration pursuant to the FAA, except for those core claims that cannot be

arbitrated without "substantially interfer[ing] with the debtor's efforts to reorganize." *See White Mountain*, 403 F.3d at 170.

This is not the analysis followed by the lower courts in this appeal. There was no dispute as to the first part of the analysis (*i.e.*, whether the parties' dispute is within the scope of the arbitration agreement), but the lower courts erroneously concluded it is a matter of *discretion* whether to compel a non-core claim to arbitration and that *no* core claims must be compelled to arbitration, without analyzing whether core claims that posed no interference with the Debtor's efforts to reorganize presented an "inherent conflict" with the bankruptcy.

## III.  There Is No Dispute that the Arbitration Clause Encompasses Each of Debtor's Claims

Here, the Arbitration Clause encompasses all three of Debtor's causes of action (*i.e.*, the objection to the proof of claim, the request for declaratory judgment, and the NCDCA claim). The Arbitration Clause provides that all "disputes" between Debtor and CashCall are to be resolved in binding arbitration. JA 76. The word dispute "is to be given its broadest possible meaning and includes, without limitation all claims or demands . . . based on any legal or equitable theory . . . and regardless of the relief sought." *Id*. The scope of the Arbitration Clause specifically includes all claims that arise under state and federal statutes. *Id*.

25

The objection to the proof of claim is a demand for the bankruptcy court to disallow CashCall's proof of claim, which is a cause of action that arises under 11 U.S.C. § 502(a). JA 31, at ¶ 1. The declaratory judgment action is a claim for equitable relief that arises under 28 U.S.C. § 2201. JA 35, at ¶ 14. The NCDCA claim is a demand for a money judgment grounded in N.C. Gen. Stat. §§ 75-50 to -56. JA 38-40, at ¶¶ 25-36. Each of these claims fall within the broad language of the Arbitration Clause. *See Cara's Notions v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998) (an "extremely broad arbitration clause," which called for arbitration of "[a]ny controversy or claim arising out of or relating to . . . any aspect of the relationship" covered all conflicts between the parties); *Levin v. Alms & Assocs.*, 634 F.3d 260, 267 (4th Cir. 2011) (broad language referring to "'[a]ny dispute' encompassed any dispute between the parties, past or present"); *see also* JA 60, ¶ 8 (Debtor's argument that the claims should be heard by the bankruptcy court "even if an arbitration provision is at issue."); JA 126-27 (District Court's holding that denial of arbitration was appropriate in the bankruptcy context "even where those claims would in another setting be inarguably subject to referral to arbitration.").

**IV.  Because Congress Did Not Intend to Create an Exception to the FAA for Any of Debtor's Claims, the Federal Arbitration Act Requires the Bankruptcy Court to Stay the Entire Adversary Proceeding and Compel Arbitration**

In this case, the Bankruptcy Court and District Court construed the law precisely backwards. Instead of recognizing that the FAA and *McMahon* require all non-core claims and some core claims to be arbitrated, they held that the FAA required arbitration of only some non-core claims and no core claims. JA 126-27. (holding that bankruptcy courts have an "absolute interest" in resolving core claims and may hear non-core claims that are "inextricably intertwined" with core claims). The Bankruptcy Court never explained or even addressed *McMahon*, which requires a finding that Congress did not intend for the FAA to reach any of Debtor's claims. *See, e.g.*, *In re Mintze*, 434 F.3d at 231 ("Where an otherwise applicable arbitration clause exists, a bankruptcy court lacks the authority and discretion to deny its enforcement, *unless* the party opposing arbitration can establish congressional intent, under the *McMahon* standard, to preclude waiver of judicial remedies for the statutory rights at issue."). Whether Congress intended for a specific proceeding to be exempt from the FAA is a question of law, not a matter of discretion. *See Hays*, 885 F.2d at 1162 n.10 ("Under *McMahon*, the [bankruptcy court] will never have discretion in deciding whether to enforce an arbitration clause under the Arbitration Act because if the subsequent act does supercede the Arbitration Act, the court will be bound to follow the direction of the subsequent

27

enactment" and if the statute does not, the bankruptcy court is bound to follow the FAA); *see also In re Mintze*, 434 F.3d at 228 ("Before we can determine whether the Bankruptcy Court abused its discretion, we must determine whether the Bankruptcy Court had any discretion to exercise.") The lower courts' rulings on this issue are therefore legal determinations that are reviewable by this court de novo. *In re Taneja*, 743 F.3d at 429; *Hays*, 885 F.2d at 1157 ("Since determining whether such a 'contrary congressional command' exists involves the interpretation of statutes, legislative history, and the purposes underlying congressional acts, our review on this issue is plenary.")

### A.    The FAA Requires the Bankruptcy Court to Compel Arbitration of Debtor's Non-core NCDCA Cause of Action.

As discussed above, courts have universally held that the FAA requires bankruptcy courts to compel arbitration of non-core disputes that fall within an arbitration agreement." *See In re Gandy*, 299 F.3d at 495 ("[I]t is generally accepted that a bankruptcy court has no discretion to refuse to compel arbitration of matters not involving 'core' bankruptcy proceedings under 28 U.S.C. § 157(b)."); *In re Crysen/Montenay*, 226 F.3d at 166 ("[The proposition] that district courts *must* stay non-core proceedings in favor of arbitration . . . is generally accepted." (emphasis in original)); *id.* at 166 ("[B]ankruptcy courts *must* stay non-core proceedings . . . ." (emphasis in original)); *Matter of Nat'l Gypsum Co.*, 118 F.3d at 1066 (the conclusion that non-core core claims must be referred to

28

arbitration "makes eminent sense" and "has been universally accepted"); *In re Gurga*, 176 B.R. at 197 ("We hold that a bankruptcy court must enforce an agreement to arbitrate a claim that is noncore."); *see also In re Thorpe Insulation Co.*, 671 F.3d at 1101; *In re Elec. Mach. Enters.*, 479 F.3d at 796 n.2; *MBNA*, 436 F.3d at 108; *In re U.S. Lines*, 197 F.3d at 640; *Hays*, 885 F.2d at 1150. This unanimous collection of persuasive authority was completely ignored by the lower courts.

Here, the Court should reach the same conclusion as its sister courts unless Debtor can show that Congress intended to limit the FAA's application to non-core claims when it enacted the Bankruptcy Code. *McMahon*, 482 U.S. at 227. This the Debtor cannot do.

### 1. Congress Has Not Expressly Created an Exception to the FAA for Non-core Claims in Bankruptcy.

Debtor, like many litigants before her, has not been able to identify any language in the Bankruptcy Code or its legislative history that manifests an intention by Congress to roll back the blanket application of the FAA in the context of non-core claims in bankruptcy. *McMahon*, 482 U.S. at 227; *see, e.g.*, *Hays*, 885 F.2d at 1157 ("Hays has pointed to no provisions in the text of the bankruptcy laws, and we know of none, suggesting that arbitration clauses are unenforceable in a non-core adversary proceeding").

Indeed, such an argument would be futile because the text of the Bankruptcy Code demonstrates that Congress intended just the opposite. The Bankruptcy Code gives district courts (and to some extent, bankruptcy courts) *non-exclusive* jurisdiction over non-core matters. 28 U.S.C. § 1334(b) (district court has non-exclusive jurisdiction to decide non-core matters); 28 U.S.C. § 157(c)(1) (bankruptcy court has jurisdiction to hear non-core matters and provide findings of fact and conclusions of law to the district court). In fact, the Bankruptcy Code *requires* the federal courts to defer consideration of non-core claims when the court could not have exercised subject matter jurisdiction in the non-bankruptcy context and a pending state proceeding "can be timely adjudicated." 28 U.S.C. § 1334(c). Certain non-core claims cannot be heard by the bankruptcy court at all. *See* 28 U.S.C. § 157(b)(5) (bankruptcy court does not have jurisdiction to hear personal injury or wrongful death matters). Because the very structure of the Bankruptcy Code presumes that other tribunals may—and in some cases, must—exercise jurisdiction over non-core claims, Congress could not have intended to preclude application of the FAA to these claims. *See Hays*, 885 F.2d at 1157 n.13 (3d Cir. 1989) (in light of the courts' limited jurisdiction over non-core claims, "Congress could not have intended that all claims relating to title 11 be heard in one bankruptcy court."); *see also In re U.S. Lines, Inc.*, 197 F.3d at 640; *In re Gurga*, 176 B.R. at 200.

**2.    Arbitration of Debtor's Non-Core Claim Would Not Inherently Conflict with the Purposes of the Bankruptcy Code.**

The courts have never found a non-core claim that is so integral to the bankruptcy process that arbitration would "seriously jeopardize" or "substantially interfere" with the Debtor's ability to reorganize. This is because non-core matters are, *by definition*, separate and apart from "the restructuring of debtor-creditor relations, which is the core of the federal bankruptcy power[.]" *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982). Because the resolution of non-core matters is always ancillary to the restructuring the debtor-creditor relationship, it is axiomatic that non-core claims may not "inherently conflict" with the purposes of a Bankruptcy Code designed to do just that. Bankruptcy courts may not enter judgment on non-core matters, but must instead prepare findings of fact and conclusions of law for the district court. 28 U.S.C. § 157(c)(1). In this respect, there is no real procedural difference between (i) hearing the non-core matter in the bankruptcy court and having the district court later enter judgment on the findings of fact and conclusions of law or (ii) hearing the non-core matter before an arbitrator and having the district court later confirm the arbitrator's award. *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1158 (3d Cir. 1989) ("We fail to perceive, and Hays has not shown, any greater

31

adverse impact on the purposes of the Bankruptcy Code . . . from a grant of the motion to compel and stay arbitration than from its denial.").

With respect to the specific non-core claim Debtor asserts here, resolving Debtor's non-core NCDCA claim in arbitration would not "inherently conflict" with the purposes of the Bankruptcy Code. For her to prevail here, it is Debtor's burden to establish that arbitration of her NCDCA claim would "substantially interfere" with her efforts to reorganize. *See White Mountain*, 403 F.3d at 170; *see also McMahon*, 482 U.S. at 227. Not only has Debtor utterly failed to make this showing, but the record unequivocally demonstrates that arbitration would *not* interfere with her efforts to reorganize.

As the Bankruptcy Court correctly noted, the NCDCA cause of action is constitutionally non-core—it is "unrelated to [CashCall's] proof of claim and [is] only related to the bankruptcy case in that if successful, the bankruptcy estate will recover any non-exempt funds and disburse them to claims in accordance with the bankruptcy code." JA 87. Debtor's Chapter 13 Plan was confirmed without objection, JA 50, and the resolution of the NCDCA in an arbitral forum would not complicate her path to discharge in any way. *See In re Gurga*, 176 B.R. at 199 (holding that arbitration is appropriate when "[i]t is not the right to bankruptcy, to discharge or to any substantive right created in the Bankruptcy Code that would be arbitrated.").

The Bankruptcy Court also recognized that non-core claims "generally" must be referred to arbitration. JA 84. However, it inexplicably refused to apply the rule Debtor's non-core NCDCA claim, electing instead to ignore the FAA's mandate, hear the claim, and provide findings of fact and conclusions of law to the District Court. JA 88. Indeed the Bankruptcy Court ignored two other decisions from its own district that reached the opposite conclusion. *See In re TP, Inc.*, 479 B.R. 373, 382 (Bankr. E.D.N.C. 2012) (referring all non-core claims to arbitration); *In re D & B Swine Farms, Inc.*, 09-02813-8-JRL, 2011 WL 6013218 (Bankr. E.D.N.C. Dec. 2, 2011) (same). The Bankruptcy Court offered no rationale for this abrupt departure not only from its own analysis, but also from existing precedent in its own district.

The District Court's opinion affirming the Bankruptcy Court's unexplained departure from settled law is a modern example of the "longstanding judicial hostility to arbitration agreements" that has been repeatedly rejected by the Supreme Court and this Court. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 80 (2000). In particular, the District Court failed to discuss the *McMahon* analysis at all. Instead, the District Court unduly emphasized that overlapping issues between the Debtor's non-core claims and her objection to the proof of claim was sufficient to deny arbitration of those claims. Specifically, the District Court reasoned that the NCDCA cause of action "exclusively depend[ed]

33

on" and would "rise or fall" with the determination of the declaratory judgment cause of action, which itself was "necessarily intertwined" with the objection to the proof of claim. JA 86, 126-127. (As noted below, in *Summer Rain* this Court expressly rejected such language when used by a lower court to deny a motion to compel arbitration.) Daisy-chaining the claims together to avoid application of the FAA was appropriate, the District Court held, because referring Moses' NCDCA claim to arbitration would bifurcate the adversary proceeding and "frustrate, rather than facilitate the efficiency favored by arbitration and could potentially lead to inconsistent results." JA 128. Favoring the "countervailing policy of the bankruptcy code" over the FAA's mandate, the District Court suggested that it would be better to have the bankruptcy court "consider both claims together and . . . enter findings of fact and conclusions of law on Moses' non-core claim." *Id.* In other words, the District Court based its ruling on its notions of judicial economy and efficiency, without giving the requisite deference to the FAA or to the necessity of finding "an inherent conflict" between the FAA and the Debtor's bankruptcy proceedings. Notably, the District Court did not find that arbitration would interfere with the Debtor's reorganization or conflict with the policies of the Bankruptcy Code.

Each of these lower court justifications for ignoring the FAA in this case run sharply counter to well established and binding precedent.

First, the Supreme Court has expressly held that the question of whether to enforce an arbitration agreement is not a matter of weighing competing public policies. *Randolph*, 531 U.S. at 90 ("[E]ven claims arising under a statute designed to further important social policies may be arbitrated because, so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the statute serves its functions." (internal quotation and alteration marks omitted)); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) ("The Sherman Act, the Securities Exchange Act of 1934, RICO, and the Securities Act of 1933 all are designed to advance important public policies, but, as noted above, claims under those statutes are appropriate for arbitration.") (citing *Mitsubishi Motors*, 473 U.S. 614; *McMahon*, 482 U.S. 220; *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989)). It is up to Congress—not the courts—to determine the best blend of public policy. By enacting the FAA, Congress has emphatically endorsed a far-reaching and unqualified policy in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24. The question before the courts is not whether this potentially inefficient pro-arbitration policy *ought to* apply in bankruptcy, but rather whether Congress *intended* for certain bankruptcy proceedings to be exempt. *McMahon*, 482 U.S. at 227; *Byrd*, 470 U.S. at 217 (holding that the courts are not at liberty to "substitute [their] own views of economy and efficiency for those of Congress." (internal quotation marks

35

omitted)). Neither Debtor nor the District Court have identified anything in the text of the Bankruptcy Code or its legislative history that demonstrate such an intent. Nor have they identified an "inherent conflict" between the bankruptcy proceeding and resolution of the NCDCA claim through arbitration. In the absence of such a showing, the policy Congress articulated in favor of arbitration in the FAA must prevail.

Second, the lower courts' dismissive treatment of the FAA's mandate reflects a fundamental misapprehension of the statute's purpose. JA 128 ("In this instance, referral of Moses' second claim for relief to arbitration would frustrate, rather than facilitate, the efficiency favored by arbitration"). Judicial efficiency is not the governing standard here. "The legislative history of the Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate. *We therefore reject the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims*." *Byrd*, 470 U.S. at 219 (emphasis added). "The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal litigation'[.]" *Id.* at 221; *see also Hays*, 885 F.2d at 1158 (holding that potential inefficiency of bifurcated proceedings is irrelevant); *In re Mor-Ben Ins. Markets Corp.*, 73 B.R. 644, 648 (B.A.P. 9th Cir.

1987) ("The arbitration Act requires district courts to compel arbitration even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."). "[W]hen a complaint contains both arbitrable and nonarbitrable claims, the Act requires courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 26, 181 L. Ed. 2d 323 (2011).

Third, the District Court's position that all the claims should be heard in the bankruptcy court because they involve overlapping questions of fact has been pointedly rejected by the appellate courts many times over.[5] *See, e.g.*, *Brown v. Trans World Airlines*, 127 F.3d 337, 342 (4th Cir. 1997) ("The Supreme Court has more than once held that factual similarity between claims does not create identity for purposes of a requirement for arbitration.") (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 50 (1974); *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 263 (1994)); *McMahon*, 482 U.S. at 239-40 (1987); *Summer Rain v. Donning*

---

[5] In this case, the District Court's error is exacerbated by its unwarranted assumption that the NCDCA claim is "in essence . . . [a claim] for damages arising out of her [declaratory judgment] claim." JA 127. This is not accurate because Debtor alleges that CashCall violated the NCDCA by engaging in conduct specifically proscribed by the statute, not merely because the Loan Agreement was purportedly void. JA 39 at ¶ 32. Because Debtor will have to develop evidence to prove these specific violations, a trial on the NCDCA claim will involve much more than a determination of whether the Loan Agreement is valid.

*Co./Publishers, Inc.*, 964 F.2d 1455, 1457 (4th Cir. 1992); *see also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 408-10 (1988) (holding that proceedings must be bifurcated even if resolution of an arbitrable claim and a non-arbitrable claim "would require addressing precisely the same set of facts" and "deciding precisely the same issue").

In *Brown*, this Court found that the scope of the arbitration agreement in an employment agreement encompassed only breach of contract claims between the parties. 127 F.3d at 341. The employee's complaint alleged that her employer retaliated against her for reporting sexual harassment, for which she made two separate claims for relief: one for breach of the employment agreement and another for violation of Title VII. *Id.* at 338. This Court recognized that "the facts that make out a Title VII claim might well also make out a breach of contract claim under the contractual antidiscrimination provision in this case," but held that the proceeding must nonetheless be bifurcated, with the contractual claim to be heard in arbitration and the Title VII claim to be heard in the courts. *Id.* at 342; *see also Alexander*, 415 U.S. at 44 (holding that breach of contract claim was properly arbitrated but the parallel Title VII claim could be heard in the courts because "[t]he distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual

occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.")

Similarly, in *McMahon*, the Supreme Court considered a RICO claim in which the imposition of civil damages would rise or fall based on the determination of whether an underlying crime had been committed. 482 U.S. at 239-40. The determination of guilt in the criminal context was non-arbitrable, but the Court nevertheless held that the FAA required the civil claim for damages to be arbitrated. *Id.* at 240 ("We . . . find that the criminal provisions of RICO do not preclude arbitration of bona fide civil actions brought under § 1964(c)."); *see also Norris*, 512 U.S. at 266 (holding that the existence of common factual questions in both the arbitrable and nonarbitrable claims did not mean that all claims must be decided in the same forum).

By expressly requiring arbitrable and non-arbitrable claims to be sent to their respective forums even when the claims hinge on the exact same findings of fact, the Supreme Court and this Circuit have implicitly rejected the lower courts' concerns that such an approach "could potentially lead to inconsistent results." JA 128. Of course it may; but it does not matter. *See Byrd*, 470 U.S. at 221 (holding that findings by an arbitrator are not automatically entitled to preclusive effect in federal courts). Even if the adversary proceeding is bifurcated and the arbitrator concludes that the Loan Agreement is valid in the context of the non-core NCDCA

cause of action, the Bankruptcy Court's ability to determine the core proof of claim issue would not be impaired.

In *Summer Rain*, this Court admonished a trial court for refusing to compel arbitration of arbitrable claims when the lower court felt the claims were "inextricably intertwined" with and would "largely stand or fall" on resolution of issues that were common with the non-arbitrable claims. 964 F.2d at 1457, 1459. This Court pointedly held that

> [t]he district court erred in its reliance on the intertwining doctrine. Courts that followed the intertwining doctrine held that "[w]hen arbitrable and nonarbitrable claims arise out of the same transaction, and are sufficiently intertwined factually and legally, the district court . . . [could] in its discretion deny arbitration as to the arbitrable claims and try all the claims together in federal court." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 216-17 (1985). However, we think the [Supreme] Court rejected the intertwining doctrine in *Byrd*, in its holding that "the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Id.* at 217, 105 S.Ct. at 1241. Contrary to the district court's reasoning, therefore, the fact that the matters to be arbitrated may be "intertwined factually and legally" with the matters to be decided by the district court no longer presents an obstacle to arbitration of the arbitrable matters.

*Id.* at 1460. This is precisely the phrasing used by the District Court here to support its erroneous conclusion not to compel arbitration.

40

Likewise, in this case, the lower courts' many rationalizations for ignoring Congress's FAA mandate are erroneous. The courts' presumptions (i.e., that efficient resolution of the claim in the bankruptcy court is the best policy, that the purposes of the FAA would not be furthered by compliance with the statute, and that the otherwise arbitrable claims should be decided by the court because they are factually intertwined with non-arbitrable claims) seem to be nothing more than relics of "the old judicial hostility to arbitration." *See Rodriguez*, 490 U.S. at 480 (quoting *Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978, 985 (2d Cir. 1942)). Simply put, these holdings have no place in modern jurisprudence. *See, e.g.*, *Hays*, 885 F.2d at 1158 (arbitration of non-core matters must be enforced "even if there were some potential for an adverse impact on the core proceeding, such as inefficient delay, duplicative proceedings, or collateral estoppel effect").

Finally, the District Court's exclusive reliance on *Hooks v. Acceptance Loan Co., Inc.*, No. 2:10-CV-999-WKW, 2011 WL 2746238 *5 (M.D. Ala. July 14, 2011), further highlights the flaws in its analysis. In *Hooks*, the district court was faced with the question of whether a contempt proceeding for violation of the automatic stay in bankruptcy was arbitrable. The court expressly recognized that no appellate court has ever allowed arbitration of a non-core claim and that even many core claims must be arbitrated. *Id.* at *3. The court stated that "[t]he claims asserted in this case by Plaintiff are somewhat difficult to classify as either core or

41

non-core" because they were not causes of action, per se, but rather a requests for the court to exercise its inherent authority to enforce its own orders. *Id.* at *4. However, after some analysis, the court concluded that the Plaintiff's claims were core. *Id.* at *5 (noting "the close relationship between these failed causes of action and what is unquestionably a core proceeding"). The court denied arbitration because, "although being a core proceeding does not automatically foreclose arbitration, . . . allowing arbitration of contempt proceedings would effectively strip the courts of their primary enforcement mechanism." Id. at *5. Thus *Hooks* supports the sound legal proposition that core claims must be arbitrated unless they inherently conflict with the Bankruptcy Code, not the District Court's novel position that non-core claims do not need to be arbitrated if they are related to core claims.

### B.    The FAA Requires the Bankruptcy Court to Compel Arbitration of Debtor's Core Declaratory Judgment and Objection-To-Claim Causes of Action.

The FAA similarly requires arbitration of core bankruptcy disputes unless, under the two prong *McMahon* analysis, the party opposing arbitration can show that Congress intended to limit the FAA's application to these claims when it enacted another statute. *McMahon*, 482 U.S. at 227 ("The burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue . . . [by showing that] such an

intent [is] deducible from the statute's text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes." (internal citation, quotation, and alteration marks omitted)). In this instance, not only did the lower courts not even embark on a proper *McMahon* analysis, but no such showing has or can be made.

### 1.    Congress has not Expressly Created an Exception to the FAA for Core Claims in Bankruptcy.

In *White Mountain*, this Court did not reach the issue of whether the text and legislative history of the Bankruptcy Code evinced an intent by Congress to exempt core claims from the application of the FAA. *White Mountain*, 403 F.3d at 169 (recognizing, without deciding, the question of whether "the statutory text giving bankruptcy courts core-issue jurisdiction reveals a congressional intent to choose those courts in exclusive preference to all other adjudicative bodies, including boards of arbitration, to decide core claims."). However, the Supreme Court has instructed that exclusive federal jurisdiction alone is not enough to show that Congress intended to preclude arbitration.

In *McMahon*, the Supreme Court decided the arbitrability of a claim under the Securities Exchange Act of 1934. 482 U.S. at 222. The Act expressly provided that

> "[t]he district courts of the United States . . . shall have **exclusive jurisdiction** of violations of this title or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title or the rules and regulations thereunder.

*Id.* at 227 (emphasis added) (quoting 15 U.S.C. § 78aa). The Act also precluded contractual waiver of any of its provisions. *Id.* (citing 15 U.S.C. § 78cc(a)). Nevertheless, the Court held that the anti-waiver and exclusive jurisdiction provisions did not prevent the parties from agreeing to have their dispute heard in a non-judicial forum. *Id.* at 228; *see also Rodriguez*, 490 U.S.at 481 (federal court's jurisdiction over claims under the Securities Act of 1933 does not prevent parties from contracting to arbitrate their disputes). The lesson from *McMahon* is that statutes requiring certain types of claims to be brought exclusively in the federal courts do not preclude the parties from entering an enforceable agreement not to bring the claims in a court at all. *McMahon*, 482 U.S. at 229 ("[A]rbitration is an adequate substitute for adjudication as a means of enforcing the parties' statutory rights . . . waiver of a judicial forum [is barred] only where arbitration is inadequate to protect the substantive rights at issue.").

That Congress has determined some judicial remedies to be available only in federal courts does not necessarily mean that Congress intended to preclude *waiver* of those judicial remedies through an arbitration agreement. *See Hays*, 885 F.2d at 1162 n.12 ("[E]ven if exclusive jurisdiction to hear such actions had been given to

the district courts, the question would still remain under *McMahon* whether there is affirmative evidence that Congress intended to 'preclude a waiver of judicial remedies' in favor of arbitration."). The exclusive jurisdiction language of the Bankruptcy Code should not be read to mean what it does not say. Because the Bankruptcy Code is silent as to whether Congress intended to carve out an exception to the FAA for core claims in bankruptcy, the courts must examine each core claim to determine whether the Bankruptcy Code inherently conflicts with the FAA's mandate. *McMahon*, 482 U.S. at 226; *Hays*, 885 F.2d at 1161; *Matter of Nat'l Gypsum Co.*, 118 F.3d at 1067; *MBNA*, 436 F.3d at 108.

### 2.    Arbitration of Debtor's Core Claims Would Not Inherently Conflict with the Purposes of the Bankruptcy Code.

An inherent conflict exists only when arbitration would "seriously jeopardize the objectives of the [Bankruptcy] Code." *Hays*, 885 F.2d at 1161; *see also In re Eber*, 687 F.3d at 1130 n.6; *MBNA*, 436 F.3d at 108; *In re U.S. Lines*, 197 F.3d at 640-41; *Matter of Nat'l Gypsum Co.*, 118 F.3d at 1067. In the words of this Court, an inherent conflict exists when "arbitration would . . . substantially interfere[ ] with the debtor's efforts to reorganize." *White Mountain*, 403 F.3d at 170. Here, the record clearly demonstrates that no jeopardy or interference with the Debtor's reorganization would result from arbitration of the adversary proceeding. As noted *infra*, the Debtor's plan has already been confirmed. Unsecured creditors, including CashCall, will receive nothing—regardless of whether they filed a valid

45

proof of claim. In particular, litigation as to whether CashCall's proof of claim is valid will not in any way affect the Debtor's reorganization or benefit other creditors. And arbitration of the Debtor's claims would not delay the Debtor's reorganization or her discharge. Both lower courts in effect ignored these facts.

This Court's decision in *White Mountain* starkly highlights the significant impairment necessary to support a conclusion that arbitration would frustrate the objectives of the Bankruptcy Code. In that case, a West Virginia coal miner (Phillips) sold half of his mining company (White Mountain) to a foreign investor (Congelton). *Id.* at 164. As part of the transaction, the parties executed a number of agreements that contained arbitration clauses requiring all disputes between the parties to be settled in binding arbitration in London. *Id.* White Mountain ran into significant operational difficulties due to unfavorable geological conditions. *Id.* The company survived for about a year and a half after the sale, but only because Phillips advanced over $10.6 million of his own money to cover expenses. *Id.* Congelton claimed that the advances were contributions to capital; Phillips claimed that the advances were loans. *Id.*

Congelton served Phillips with a demand that an arbitrator determine whether the advances were capital contributions or loans. *Id.* Philips responded by filing an involuntary Chapter 11 petition against White Mountain, followed by an adversary proceeding seeking a declaration that the advances had been loans. *Id.*

Congelton moved to compel arbitration. *Id.* The bankruptcy court refused to compel arbitration, noting that the adversary proceeding was a core proceeding that was "critical to [White Mountain's] ability to formulate a Plan of Reorganization." *Id.* at 167. If advances were loans, Phillips would be a creditor, able to vote in plan confirmation process; if the advances were capital, he would not be able to vote or even make a claim against the estate. *See* 11 U.S.C. § 1126(d) (requiring vote of two-third of a class of creditors to accept a plan); 11 U.S.C. § 1129(a) (requiring at least one class of impaired creditors to accept a plan). Until the debt/equity issue was resolved, the bankruptcy proceedings would be stalled and the debtor would face a host of very real practical problems that might result in the failure of the business. *See White Mountain*, 403 F.3d at 170. Accordingly, this Court held that arbitration would run against the "fundamental purpose of Chapter 11[,] . . . rehabilitation of the debtor [and] preventing it from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources." *Id.* at 170. Thus the Court perceived an inherent conflict between the FAA and the Bankruptcy Code and held that arbitration of the core claim at issue was not required by the FAA. *Id.* ("The inherent conflict between arbitration and the purposes of the Bankruptcy Code is revealed clearly in this case[.]").

Other courts have found inherent conflicts under similar circumstances, where "resolution of the arbitrable claims directly implicated matters central to the

purposes and policies of the Bankruptcy Code." *MBNA*, 436 F.3d at 110 (citing *In re U.S. Lines*, 197 F.3d at 641; *In re Gandy*, 299 F.3d at 495-99); *see also In re Nat'l Gypsum*, 118 F.3d at 1069; *In re Thorpe Insulation*, 671 F.3d at 1022-23 (holding that arbitration of a creditor's claims against a debtor is inappropriate when it "can delay the confirmation of a plan of reorganization.") *cert. denied*, 133 S. Ct. 119, 184 L. Ed. 2d 26 (U.S. 2012). No such circumstances exist here.

In contrast, where arbitration of core proceedings has no likelihood of delaying the debtor's plan of reorganization or complicating the debtor's potential for discharge, the courts have readily held that arbitration would not inherently conflict with the purposes of the Bankruptcy Code. *See, e.g.*, *MBNA*, 436 F.3d at 110 (post-discharge claim that a creditor violated the automatic stay was a core proceeding that should be arbitrated pursuant to the FAA); *In re Elec. Mach. Enterprises*, 479 F.3d at 796 (dispute whether a debtor operating under a confirmed Chapter 11 plan was required to pay a larger proportion of settlement proceeds to a creditor, even if a core proceeding, could be arbitrated without inherently conflicting with the Bankruptcy Code); *In re Fries*, 06-11424PM, 2007 WL 1073868 (Bankr. D. Md. Jan. 17, 2007) (objection to proof of claim referred to arbitration where the Chapter 13 Plan had already been confirmed).

In the case most similar to this one, the Third Circuit compelled arbitration on the motion of a lender who filed a proof of claim against a Chapter 13 debtor. *In*

*re Mintze*, 434 F.3d at 226. The debtor responded by filing an adversary proceeding challenging the validity of the loan agreement on the grounds that she had been charged excessive interest and fees and asserting affirmative consumer-protection claims for damages. *Id.* at 226. The lender moved to compel arbitration of the adversary proceeding, but the Bankruptcy Court refused, reasoning that the Debtor's rescission claim was core and non-arbitrable because it might affect her bankruptcy plan by altering the distribution to other creditors. *Id.* at 227. The District Court affirmed the Bankruptcy Court, holding that the Bankruptcy Court had acted within its discretion in refusing to compel arbitration. *Id.* at 227. The Third Circuit reversed, noting that the debtor's claims were grounded in state and federal law, and therefore were not fundamental to the bankruptcy. *Id.* at 231. The Third Circuit flatly rejected the lower courts' opinion that a potential impact on the other creditors was enough to create an "inherent conflict" demonstrating Congressional intent to limit the application of the FAA. *Id.* Because winning or losing on her claims would not affect the debtor's ability to benefit from bankruptcy protection, the Third Circuit properly held that the bankruptcy court did not have discretion to deny the lender's motion to compel arbitration of the adversary proceeding.

Similarly here, the resolution of Debtor's adversary proceeding in an arbitral forum would not imperil her potential discharge in any way. As in *In re Fries*,

Debtor's Chapter 13 Plan has already been confirmed. JA 50; *see also In re Fries*, 06-11424PM, 2007 WL 1073868 (Bankr. D. Md. Jan. 17, 2007). Unsecured creditors like CashCall will receive nothing from her bankruptcy. *Id.* CashCall has already abandoned its claim on the loan. JA 55. The only real disputes between the parties are whether CashCall should be held liable for violations of the NCDCA and whether Debtor's counsel is entitled to a declaratory judgment invalidating the loan which he could use to prosecute the non-core claims. *See* JA 61, at ¶ 12. Neither of these grounds create an inherent conflict between the FAA and the Bankruptcy Code such that arbitration of those claims would "substantially interfere" with or "seriously jeopardize" Debtor's ability to reorganize. *See White Mountain Mining*, 403 F.3d at 170; *Hays*, 885 F.2d at 1161.

If allowed to stand, the opinions below—that no core claims in bankruptcy may be arbitrated and any non-core claims that share factual or legal issues with those core claims may be heard in the bankruptcy court as well—would substantially undermine parties' rights to arbitrate claims even when such claims are ancillary to a bankruptcy reorganization. The courts below wholly ignored the Supreme Court's clear instruction in McMahon, as well as abundant precedents from this and other Circuits. These opinions depart from and significantly undermine the FAA's unambiguous breadth and scope. They create confusion instead of clarity.

## CONCLUSION

For the foregoing reasons, CashCall respectfully requests that this Court reverse the District Court and Bankruptcy Court and remand the case with instructions to compel arbitration of the adversary proceeding.

This the 22nd day of April, 2014.

**WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

/s/ Hayden J. Silver III
Hayden J. Silver III (NC State Bar 10037)
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina  27601
Phone: (919) 755-2188
Fax: (919) 755-6099
jsilver@wcsr.com

/s/ Raymond M. Bennett
Raymond M. Bennett (NC State Bar No. 36341)
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina  27601
Phone (919) 755-2158
Fax (919) 755-6068
rbennett@wcsr.com

/s/ Jesse A. Schaefer
Jesse A. Schaefer (NC State Bar No. 44773)
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina  27601
Phone (919) 755-8182
Fax (919) 755-6082
jschaefer@wcsr.com

*Attorneys for Appellant CashCall, Inc.*

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ X ] this brief contains [*12,360*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

   [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: April 22, 2014                    /s/ Hayden J. Silver III
                                         *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 22nd day of April, 2014, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Adrian M. Lapas
> STRICKLAND, LAPAS, AGNER & ASSOCIATES
> 112 North William Street
> Goldsboro, North Carolina  27530
> (919) 735-8888
>
> *Counsel for Appellee*

I further certify that on this 22nd day of April, 2014, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court.

/s/ Hayden J. Silver III
*Counsel for Appellant*